11-1356-cv
Republic of Iraq v. BNP Paribas USA

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 28th day of March, two thousand twelve.

PRESENT: REENA RAGGI,
CHRISTOPHER F. DRONEY,
*Circuit Judges*,
KIYO A. MATSUMOTO,
*District Judge*.[*]

-------------------------------------------------------------------------
THE REPUBLIC OF IRAQ,
          *Plaintiff-Appellant*,

          v.                                        No. 11-1356-cv

BNP PARIBAS USA, BNP PARIBAS HONG KONG,
BNP PARIBAS PARIS, BNP PARIBAS LONDON
BRANCH,
          *Defendants-Appellees*.
-------------------------------------------------------------------------

APPEARING FOR APPELLANT:       MARK MANEY, Roliff Purrington, Houston, Texas, (Bernstein Liebhard LLP, New York, New York, *on the brief*).

---

[*] Judge Kiyo A. Matsumoto of the Eastern District of New York, sitting by designation.

1

APPEARING FOR APPELLEE: ROBERT S. BENNETT (Christopher T. Handman, Ellen S. Kennedy, Hogan Lovells, Washington, DC, Jennifer Spaziano, Timothy G. Nelson, Bradley A. Klein, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, *on the brief*).

Appeal from an order of the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order entered on March 3, 2011, is AFFIRMED.

The Republic of Iraq ("Iraq") appeals from the denial of its motion to compel arbitration and the grant of defendants' (collectively "BNP Paribas") motion to stay arbitration. Iraq sought to arbitrate breach of contract and fiduciary duty claims as a purported third-party beneficiary of a contract between the United Nations and BNP Paribas in connection with a 1995 United Nations resolution creating an exception to economic sanctions on Iraq for the sale of oil, provided that proceeds were used to meet the humanitarian needs of the Iraqi people ("Oil-for-Food Program"). See S.C. Res. 986, U.N. Doc. S/RES/986 (Apr. 14, 1995). Iraq contends that the district court erred in concluding that (1) whether Iraq could invoke arbitration was a matter for judicial determination, and (2) Iraq could not invoke arbitration. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. <u>Who Should Decide Arbitrability</u>

In a judicial proceeding to compel arbitration under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, questions of arbitrability are "presumptively to be decided by courts, not the arbitrators themselves." <u>Telenor Mobile Commc'ns AS v. Storm LLC</u>, 584 F.3d 396, 406 (2d Cir. 2009). This presumption can be rebutted only by "<u>clear and unmistakable evidence</u> from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." <u>Id.</u> (emphasis added, internal quotation marks omitted).

> The relevant arbitration clause provides as follows:
>
> Any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof, unless settled amicably under Article 1.23.1 within sixty (60) days after receipt by one Party of the other Party's request for such amicable settlement, shall be referred by either Party to arbitration in accordance with the UNCITRAL Arbitration Rules then obtaining and the directions contained in this Article 1.23.2. . . . The Parties shall be bound by the arbitration award rendered in accordance with such arbitration as the final adjudication of any such dispute, controversy, or claim.

J.A. 339. Like the district court, we conclude that this language does not provide clear and unmistakable evidence that the particular question of arbitrability at issue here—whether Iraq may invoke the arbitration clause as a third-party beneficiary of the contract—should be decided by arbitrators. <u>See</u> <u>Contec Corp. v. Remote Solution, Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005) ("Our review of whether the issue of arbitrability is for the court or for the arbitrator is <u>de novo</u>." (internal quotation marks omitted)). To the contrary, the language

3

specifically says that a dispute "shall be referred by either <u>Party</u> to arbitration" and that the "Parties" shall be bound by the award. J.A. 339 (emphasis added).

In urging otherwise, Iraq points to our prior decisions identifying clear and unmistakable evidence of the parties' intent to have arbitrators decide questions of arbitrability where, as here, the parties have incorporated rules that empower an arbitrator to determine its own jurisdiction. <u>See, e.g.</u>, <u>Republic of Ecuador v. Chevron Corp.</u>, 638 F.3d 384, 395 (2d Cir. 2011) (concluding that incorporation of UNCITRAL rules signaled parties' intent to have validity of arbitration agreement decided by arbitrators). But evidence of intent to have an arbitrator determine its jurisdiction with regard to disputes "referred by either Party," J.A. 339, does not clearly and unmistakably demonstrate their intent to have the arbitrator determine its jurisdiction with respect to any dispute raised by a <u>non-party</u>. <u>See</u> <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 130 S. Ct. 1758, 1774 (2010) (underscoring consensual nature of private dispute resolution, and holding that parties may structure arbitration agreements to limit both issues they choose to arbitrate and "<u>with whom</u> they choose to arbitrate their disputes" (emphasis in original; internal quotation marks omitted)). Where, as here, the arbitration clause does not clearly vest any right to invoke arbitration in a non-party such as Iraq, <u>a fortiori</u>, it does not afford Iraq the right to have arbitrators rather than a court determine the arbitrability of its dispute.

<u>Contec Corp. v. Remote Solution, Co.</u>, 398 F.3d 205, warrants no different conclusion. There, we concluded that Contec Corporation could compel arbitration of the arbitrability of a dispute arising under an agreement signed by its prior corporate form,

4

Contec L.P., and defendant Remote Solution, even though the arbitration clause was limited to disputes between the "parties." Id. at 208. Two facts informed that conclusion: (1) the "undisputed relationship between each corporate form of Contec and Remote Solution" and (2) the parties continued conduct of themselves as subject to the agreement regardless of change in corporate form. Id. at 209. In the absence of such circumstances here, Contec Corp. hardly compels the conclusion that BNP Paribas clearly and unmistakably agreed to arbitrate claims arising out of its contract with the United Nations with a purported third-party beneficiary of the contract. Unlike Contec Corporation, Iraq has no claim to be in any sense a "party" under the language of the arbitration clause, and thus it cannot demand an arbitral rather than judicial determination of arbitrability.

2.      Whether Iraq's Dispute is Arbitrable

Under New York law, which applies to the extent it is not preempted by the Federal Arbitration Act, see Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 129 S. Ct. 1896, 1902 (2009), we assess Iraq's claim to an enforceable right to compel arbitration under a preponderance of the evidence standard, see Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 46 (2d Cir. 1993).[1]

---

[1] Where, as here, "the parties dispute not the scope of an arbitration clause but whether an obligation to arbitrate exists," the general presumption in favor of arbitration does not apply. Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011); cf. Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, 198 F.3d 88, 95 (2d Cir. 1999) ("Whether an entity is a party to the arbitration agreement also is included within the broader issue of whether the parties agreed to arbitrate." (internal quotation marks omitted)).

5

Assuming arguendo that Iraq is a third-party beneficiary with a right to enforce the United Nations contract with BNP Paribas, Iraq must nevertheless show by a preponderance of the evidence that the parties intended to provide Iraq with the right to invoke arbitration. See Williams v. Progressive Ne. Ins. Co., 41 A.D.3d 1244, 1245, 839 N.Y.S.2d 381, 381 (4th Dep't 2007) ("It is well settled that a third party beneficiary is entitled only to those rights which the original parties to the contract intended the third party to have."); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. at 1782 ("Arbitration is a matter of consent, not coercion").

For reasons already discussed, the plain language of the provision defeats any such contention. The provision's focus on "Parties," J.A. 339, and its express identification of Parties as the only persons who could refer disputes to arbitration is all the more striking given that the agreement anticipated potential third-party claims in provisions that indemnify BNP Paribas for "any claim by a third party . . . arising out of any breach of or failure to perform" the agreement, J.A. 322.[2] Thus, even if the contract between the United Nations and BNP Paribas can give rise to third-party claims, there is no evidentiary basis for concluding that the parties bound themselves to resolve such claims through arbitration.[3]

---

[2] Iraq's contention that we have previously permitted arbitration by a third-party beneficiary where the clause was restricted to specific parties is meritless. In Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d at 48, we allowed arbitration because the parties to the litigation entered a separate agreement that incorporated the arbitration agreement by reference.

[3] Sokol Holdings v. BMB Munai, 542 F.3d 354 (2d Cir. 2008), warrants no different conclusion. We permitted arbitration in that case only to the extent that the signatory

6

3.	Conclusion

We have considered Iraq's remaining arguments and conclude they are without merit.

The order of the district court is therefore affirmed.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

plaintiff had sought specific performance from the non-signatory defendant, relief obtainable only by treating defendant as a party to the contract. Indeed, in denying arbitration for all other claims, we emphasized that "one does not give up one's right to court adjudication except by consent," and estoppel required evidence either that (1) the signatory "had consented to extend its agreement to arbitrate to" the non-signatory, or (2) that it would be "inequitable for [the signatory] to refuse to arbitrate." Id. at 361. Neither pertains here.